## STATE SUPREME COURT—Continued

### No. 651
### YOUGHIOGHENY & O. COAL CO. v. PASZKA

No. 19206. Supreme Court

On motion to certify. Dock. June 14, 1925; 3 Abs. 386.

615. HUSBAND & WIFE—Is common law rule that husband is liable for ante-nuptial debts of the wife abrogated by 8002 GC?

The wife of George Paszka, prior to her marriage to him, was indebted to the Youghiogheny and Ohio Coal Company, the amount of which, after her marriage, it deducted a debt owed by it to Paszka.

He brought suit before a justice of the peace of Jefferson County and obtained a judgment against the company for the amount deducted. The cause was taken to the Common Pleas and to the Court of Appeals, being affirmed in each case. The Company contends that error exists in the record because the said Court of Appeals held that the husband was not liable for the wife's ante-nuptial debt.

It was contended that under the common law husband and wife act, the husband was liable for the debts contracted by the wife prior to her marriage. In Alexander v. Morgan, 31 OS. 546, the Supreme Court held that the husband was not liable for the ante-nuptial debts of the wife.

In 1884 the following was passed:

"The husband shall not be liable upon any cause of action existing against the wife at their marriage, nor for a tort committed by her during coverture, nor upon any contract made by her except to the extent of any separate property of the wife acquired by him under an ante-nuptial contract or otherwise." The Court below held that because the present husband and wife act gives the wife the right to sue and be sued, and because 8002 GC. provides that neither the husband or wife as such, shall be answerable for the acts of the other, the husband is not liable for the ante-nuptial debts of the wife.

It is claimed that the fact that the common law rights of the husband in the wife's property were taken away 10 years prior to the Alexander v. Morgan decision, it did not change the common law rule that the husband is liable for the ante-nuptial debts of the wife.

It is contended that the general assembly will not be presumed to have intended to abrogate a settled rule of the common law unless the language used in the statute clearly imports such intention. It is further claimed that 8002 GC. neither expressly or by implication changes the common law rule, and that failure to pay a debt is not an "act" as contemplated by 8002 GC.

Attorneys—Gordon B. Kinder, Martins Ferry, for Company; Russell Buchanon, Steubenville, for Paszka.

---

### No. 652
### CHASE v. CHASE

No. 19182. Supreme Court

On motion to certify. Dock. June 1, 1925; 3 Abs. 359.

293. CONTEMPT—Can a man be imprisoned for contempt for failure to pay alimony where his ability to perform alimony order is an utter impossibility?

Defendant in error, Agnes Chase, obtained a divorce from plaintiff in error, Wallace Chase in 1917, and was awarded the custody of three minor children. At the same time an order was made that plaintiff pay her $50 per week for the support of the children. In 1920 that order was modified to read $75 per month.

At this time plaintiff earned $3000 per year and payments under the modification were made until Jan. 1, 1924 when he started into business under the name of the Chase Chemical Co. No payments were then made until December 1924 when he was cited for contempt and ordered to pay $75 to defendant or go to jail. The money was paid.

Subsequently he was again cited for contempt and he appeared in court and testified that he had not drawn more than $60 or $65 a month out of the business during the year 1924; that he had no money at the time; that his business inventoried $3000 upon which there was a $1500 mortgage. The Cuyahoga Common Pleas found Chase guilty of contempt and ordered him committed to jail until the $300 was paid. The Court of Appeals affirmed this judgment.

It is contended by Chase in the Supreme Court that, "The court, before imprisoning for failure to perform should find the accused capable of performing, unless the court should find that the accused fraudulently put it out of his power to perform." Effinger v. State. 11 OCR.

The Court of Appeals in confirming the lower court stated that Chase drew $60 or $65 per week from his business, but the record shows that he drew that amount each month. The Court also said that the judgment of the lower court itself imports verity. It is claimed that the complaint of plaintiff in error is not based upon failure of Agnes Chase to allege and prove his ability to pay.

Plaintiff's testimony showed that he had absolutely no money.

Sentencing Chase to jail for contempt, the record itself showing impossibility of performance, was unjust and the order not warranted under the law or evidence. Considering the fact that Chase was at the time of sentence, unable to comply with the order to pay, while in jail he would not be able to better himself, and the result would be sentencing him to jail for life.

Attorneys—Melville W. Vickery for plaintiff; Bernon, Mulligan, Keeley and LaFever for defendant; all of Cleveland.

Note—Motion to certify in this case overruled, 3 Abs. 418.